UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

CASE NO.:  3:18-cv-280-HTW-LRA

STATE OF MISSISSIPPI *ex rel.* JIM HOOD,
Attorney General of the State of Mississippi,

      Plaintiff,

v.

GLOBAL CLIENT SOLUTIONS, LLC,
GLOBAL HOLDINGS, LLC,
US LEGAL SERVICES GROUP, P.C.,
APEX LEGAL GROUP, P.C.,
AMERICAN FINANCIAL LAW GROUP, LLC,
MOORE LEGAL CENTER, P.C.,
THE LAW OFFICES OF ROBERT S. GITMEID
 & ASSOC., PLLC,
ROBERT S. GITMEID,
TIMBERLINE FINANCIAL, LLC,
GRT FINANCIAL, INC.,
CONSUMER CAPITAL ADVOCATES, LLC, and
ASSURANCE CONSUMER SERVICES, LLC,

      Defendants.
_____/

**GLOBAL CLIENT SOLUTIONS, LLC AND GLOBAL HOLDINGS, LLC's**
<u>**NOTICE OF REMOVAL**</u>

TO:    John Corlew, Esq.
       Corlew Munford & Smith, PLLC
       4450 Old Canton Road, Suite 111
       Jackson, MS 39211-5990
       Telephone: 601.366.1106
       Facsimile: 601.366.1052
       *mcorlew@cmslawyers.com*
       *Counsel for Plaintiff*

       George W. Neville, Esq.
       Jacqueline Ray, Esq.
       Special Assistant Attorneys General
       Office of the Mississippi Attorney General

P.O. Box 220
Jackson, MS 39205
Telephone: 601.359.3680
Facsimile: 601.359.2003
*gnevi@ago.state.ms.us*
*jacra@ago.state.ms.us*
*Counsel for Plaintiff*

Jason Graeber
2496 Pass Road
Biloxi, Mississippi 39531
Telephone: 228.207.7117
Facsimile: 228.207.8634
*Jason@jasongraeberlaw.com*
*Counsel for Plaintiff*

Hinds County Chancery Clerk
Eddie Jean Carr
Post Office Box 686
Jackson, MS  39205

Defendants Global Client Solutions, LLC and Global Holdings, LLC (collectively "Global") hereby remove the civil case styled *STATE OF MISSISSIPPI ex rel. JIM HOOD, Attorney General of the State of Mississippi v. GLOBAL CLIENT SOLUTIONS, LLC, GLOBAL HOLDINGS, LLC, et al.*, Case No.: G-18-371 from the Chancery Court of Hinds County, Mississippi First Judicial District to the United States District Court for the Southern District of Mississippi, Northern Division, pursuant to 28 U.S.C. §§ 1331, 1441, and 1446. The grounds for removal are as follows:

## I.   STATEMENT OF CASE

1.      Plaintiff, the State of Mississippi *ex rel*. Hood, filed this action in the Chancery Court of Hinds County, Mississippi on March 19, 2018. Global Client Solutions, LLC and Global Holdings, LLC received the Summons and Complaint by certified mail, return receipt requested on April 3, 2018.  Each thereafter timely returned the Acknowledgement of Receipt of Summons and Complaint on April 16, 2018, pursuant to Rules 4 and 5 of the Mississippi Rules

of Civil Procedure. The Complaint nominally alleges claims pursuant to the Mississippi Debt Management Services Act and the Mississippi Consumer Protection Act, and seeks broad relief, including declarations, injunctions, accounting and disgorgement, civil penalties, attorneys' fees and costs, as well as general relief.

## II. BACKGROUND

2.      The Federal Trade Commission's ("FTC") Telemarketing Sales Rule and the October 2010 Debt Relief Amendments (the "TSR") apply to the alleged wrongful conduct Plaintiff asserts Global committed by providing dedicated or special purpose bank accounts to Mississippi consumers enrolled in debt management programs. *See* C.F.R. § T. 16, Ch. I, Subch. C, Pt. 310; *see also* Vol. 75, Federal Register No. 153, p. 48490 and fn. 445. As a rule or regulation promulgated by a federal agency, the TSR has the force of federal law. The 2010 Debt Relief Amendments to the TSR created a specific niche for Global as a "Dedicated Account Provider" ("DAP"), which expressly permits what this lawsuit condemns. The FTC said it "did not intend the proposed [TSR] to prohibit consumers from using dedicated bank accounts," provided by a DAP such as Global. Vol. 75, Federal Register No. 153, p. 48490. The TSR specifically permits consumers "to put funds into a dedicated bank account until the services are delivered," which the FTC itself recognized is what Global does. *Id.* and fn. 445. Global is an entity administering the account, under the Rule.

3.      The concept of a DAP or third party processor has been, and continues to be, recognized in the Mississippi Debt Management Services Act ("MDMSA"). *See* Miss. Code Ann. § 81-22-3(i).[1] A DAP accepts consumer funds for deposit with an insured financial

---

1. "Third-party payment processor" means any entity that holds, or has access to, or can effectuate possession of, by any means, the monies of a licensee's debtors, or distributes, or is in the chain or distribution of such monies, to the creditors of such debtors, pursuant to an

institution. The funds, and any accumulated interest, remain the property of the consumer. The DAP is independent of any debt settlement, debt management or debt relief provider with which the customer has a contract. Other than authorized fees, all disbursements from the account are agreed to or directed by the consumer. *See* Vol. 75, Federal Register No. 153, p.48490-91.

4.      This lawsuit attacks Global's status as a DAP and the use of a dedicated special purpose account under the TSR (and under the Mississippi statute as well) as being "deceptive and mislead[ing]." *See, e.g., Complaint* at ¶¶ 22, 31-33. Federal law created Global's role as a DAP and federal law requires the use of dedicated accounts, yet Plaintiff is suing Global for doing precisely what the TSR empowers, directs, and authorizes Global to do. Global's status as a DAP under the TSR means that it is NOT a debt relief provider under the TSR and is not obligated to comply with all of the restrictions and obligations the TSR imposes on a debt relief provider. So questions of, application of, and interpretation of federal law abound in this case just as to the fact that Global is a "DAP."

5.      Likewise, Mississippi law may potentially apply to every other one of the 10 other defendants in this case. If they are "for profit debt management service providers," they may be able to claim an exemption from the Mississippi law. So, their separate entitlement to an exemption under the TSR will certainly impact any prospective relief the State is seeking in this case.

6.      For instance, if one of the other defendants is a for-profit debt management service provider, who enrolls clients in a personal "face-to-face" meeting, but does not receive or hold consumer funds, there is an exemption from the TSR. The exemption is conditioned on the

agreement or contract with the licensee. This term shall not include entities that solely provide the electronic routing and settlement of financial transactions and their sponsoring banks. Miss. Code. Ann. § 81-22-3 (West). Section 81-22-28 then provides the substantive regulation over what it is third-party processors do.

provider not receiving or holding consumer funds, so a DAP must be involved and that involvement goes full circle back to the TSR and federal law, which created the DAP function and regulates dedicated account providers – like Global. There is nothing deceptive or misleading about the relationship between a debt management service provider and a DAP, as the TSR makes clear.

7.      Additionally, Plaintiff is charging that Global is a debt management service provider under the MDMSA and is violating the statute and the state's Section 5 analogue – "Little FTC Act," – Miss. Code Ann. 75-24-1 *et seq.,* ("MCPA") by simply doing what the TSR (and the MDMSA) say a DAP is entitled to do. In this fashion, by making conduct that federal law says is permissible, and encourages, a violation of state law, Mississippi is implicitly invalidating federal law. Plaintiff's claims conflict with federal law, seek to override federal law, and conclude Global violated state law simply for doing what federal law regulates and empowers Global to do.

8.      Adding to the tension created by the claims asserted here is the fact that the MCPA itself calls for the application of federal law. Miss. Code Ann. § 75-24-3(c) makes it abundantly clear: "It is the intent of the Legislature that in construing what constitutes unfair or deceptive trade practices that the ***courts will be guided by the interpretations given by the Federal Trade Commission and the federal courts*** to Section 5(a)(1) of the Federal Trade Commission Act (15 USCS 45(a)(1)) as from time to time amended." (Emphasis added).

9.      Because the Mississippi section 5 analogue – the MCPA (patterned after Section 5(a) of the Federal Trade Commission Act (FTC Act) (15 USC §45(a)(1)) – expressly incorporates FTC decisions and actions or adopts them as guidance, the court presiding over this case will be obliged to apply the TSR and its debt relief amendments. Because the FTC is the

source of Global's status through the TSR Debt Relief Amendment, this particular MCPA claim directly bumps up against the Federal authority. Both cannot co-exist. The state cannot prohibit what federal law creates.

10.    Since the interpretation of federal law (e.g., the TSR) will inform if not control the interpretation and application of the MCPA, which borrowed the DAP definition from the TSR, federal questions are raised, as the factors explained below demonstrate.

### III.  BASIS FOR JURISDICTION; FEDERAL QUESTION.

11.    The Court has federal-question jurisdiction because the State of Mississippi's state-court Complaint asserts a claim "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Specifically, Plaintiff's claims here – by attacking the legality of a DAP and what Global is (and the other defendants are) doing – arise under not only the FTC Act and the Telemarketing and Consumer Fraud and Abuse Prevention Act (15 U.S.C. §6101 *et seq.*), for instance, but also under the regulations promulgated under the authority of both laws by the FTC. Plaintiff's right to relief no matter how denoted necessarily requires resolution of substantial questions "arising under" federal law. As one court in this district citing the U.S. Supreme Court's decision in *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312, 125 S.Ct. 2363 (2005) explained,

> "[t]he [arising under] doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." []. Accordingly, even in the absence of an affirmatively-invoked federal law, if a lawsuit implicates substantial issues of federal law, the federal court may exercise subject-matter jurisdiction; a state law cause of action may present a federal question when "plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."

*Mississippi ex rel. Hood v. Entergy Mississippi, Inc.*, No. 3:08CV780 HTW-LRA, 2015 WL 13448017, at *5 (S.D. Miss. Apr. 10, 2015) (internal citations omitted).

12.    A district court generally decides whether a complaint asserts a claim "arising under" federal law by applying the well-pleaded complaint rule. *McCrae Law Firm, PLLC v. Gilmer,* No. 3:17-CV-704-DCB-LRA, 2018 WL 283774, at *1 (S.D. Miss. Jan. 3, 2018) citing *Beiser v. Weyler*, 284 F. 3d 665, 671 (5th Cir. 2002). The "artful pleading" doctrine, which provides that "a plaintiff may not defeat removal by *omitting* to plead necessary federal questions," however, is an established exception to the well-pleaded complaint rule. *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 14, 103 S.Ct. 2841, 2848, 77 L.Ed.2d 420 (1983) (emphasis supplied). So, if a court concludes that a plaintiff has "artfully pleaded" claims, the district court may uphold removal even though no apparent federal question appears on the face of plaintiff's complaint. *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475, 118 S. Ct. 921, 925, 139 L. Ed. 2d 912 (1998). Such is the case here.

## IV.  SUBSTANTIAL FEDERAL QUESTION.

### A.    The causes of action pled by Plaintiff necessarily require resolution of significant embedded federal questions.

13.    The FTC enforces federal consumer protection laws that prevent fraud, deception and unfair business practices. https://www.ftc.gov/enforcement. In addition to its authority to investigate law violations by individuals and businesses, the Commission also has federal rule-making authority to issue industry-wide regulations.  https://www.ftc.gov/enforcement/rules. These rules, such as the FTC's TSR, have the force of law. *Chrysler Corp. v. Brown,* 441 U.S. 281, 295, 99 S. Ct. 1705, 1714, 60 L. Ed. 2d 208 (1979) (properly promulgated, substantive agency regulations have the "force and effect of law.").

14.     The U.S. Supreme Court has held that, in certain cases, "federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312, 125 S.Ct. 2363 (2005). To make the determination whether there is federal jurisdiction over a state law claim, a district court considers four factors: whether a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. *Grable*, 545 U.S., at 314, 125 S.Ct. 2363.

15.     Where all four of these requirements are met exercising federal jurisdiction over the claims is proper because there is a "serious federal interest in claiming the advantages thought to be inherent in a federal forum," which can be vindicated without disrupting Congress's intended division of labor between state and federal courts. *Id.*, at 313–314, 125 S.Ct. 2363; *Gunn v. Minton*, 568 U.S. 251, 258, 133 S. Ct. 1059, 1065, 185 L. Ed. 2d 72 (2013) (when "a claim finds its origins" in state law, there is "a special and small category of cases in which arising under jurisdiction still lies."); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1562, 1569–70, 194 L. Ed. 2d 671 (2016) (same). Each of the four factors under *Grable* is met here.

16.     Factor *(1): a federal issue is necessarily raised*. Resolution of the claims Plaintiff asserts and the relief sought here requires application of several federal statutes and rules promulgated thereunder, including the FTC's TSR, as amended, the Telemarketing and Consumer Fraud and Abuse Prevention Act, the Consumer Financial Protection Act (Title X of Dodd-Frank), and the Federal Deposit Insurance Act. For example, some of the questions include whether Global's status under the TSR as a DAP can be undermined by application of the MDMSA in order to afford Plaintiff the relief being sought. A question relating to a particular

federal law is necessarily raised if a plaintiff's right to relief requires application of that law. *See Gunn*, 568 U.S. at 259, 133 S.Ct. 1059. Here each claim not only implicates these embedded federal laws, but also requires application of the TSR to ensure uniformity in the law.

17.     *Factor (2): a federal issue is actually disputed*. Plaintiff here has omitted to address glaringly necessary federal questions interwoven with the deceptively plain state law claims asserted. Clearly, Plaintiff is either ignoring or disputing Global's role as a DAP under FTC promulgated regulations and rules, even though Mississippi recognizes the FTC as the guiding force in interpreting unfair and deceptive practices in this area. *See, e.g.,* Miss. Code Ann. § 75-24-3(c). The fact that Mississippi brought this action in state court without even the slightest mention of, for example, the FTC or more importantly the TSR suggests the State does not believe federal law has any effect on how Global is treated under state law or on the outcome of this case.

18.     These federal laws and issues will significantly control determination of the matters alleged about Global's business model and Global's status as a DAP administering "special purpose accounts," which Plaintiff places squarely at issue. *See Complaint e.g.,* at ¶¶ 33, 35 & 47. A federal question is actually disputed where the parties disagree about the federal law's effect on the outcome of the case. *See Grable*, 545 U.S. at 315, 125 S.Ct. 2363.

19.     For example, in *Grable*, after removal the parties disputed whether the former landowner received proper notice, as required by a federal statute, before the Internal Revenue Service ("IRS") sold his property. *Id.* at 310–11, 125 S.Ct. 2363. The owner argued that personal service was required under the statute, and the tax-sale purchaser disagreed, arguing that service by certified mail was sufficient. *Id.* at 311, 125 S.Ct. 2363. If the federal statute required personal

service, the owner would prevail on his quiet title claim and retain the property. *Id*. The Supreme

Court held the suit presented a removable federal question.

20.     Here Global is pointing out that federal law – the TSR promulgated under the

authority of the Telemarketing and Consumer Fraud and Abuse Prevention Act – provided it

with its status as a DAP. If that is what federal law requires of Global, Global will prevail. Artful

pleading cannot trivialize these issues implicating federal law. The State's attempted

mischaracterization of Global's status, confusing the roles of a DAP and a DMSP, and the

State's demonization of Global for doing precisely what federal law enables and authorizes it to

do, necessarily implicates questions of federal law.

21.     ***Factor (3): a federal issue is substantial***. The effectiveness of the FTC's

comprehensive nationwide uniform regulatory scheme will be compromised in the absence of

considering and applying these federal laws and regulations to both Plaintiff's MCPA and

MDMSA claims, each of which substantially embody their analogous federal laws. Those federal

laws are the manifestation of Congress's intentions and actions, and the resulting agency

regulatory scheme put in place to enforce what Congress did uniformly throughout the country.

For a question to be substantial in the context of federal question jurisdiction, "it is not enough

that the federal issue be significant to the particular parties in the immediate suit." *Gunn*, 568

U.S. at 260, 133 S.Ct. 1059. Rather, "the substantiality inquiry . . . looks instead to the

importance of the issue to the federal system as a whole." *Id.*

22.     In this case, this factor is met because the MCPA and the MDMSA have

analogues in virtually every state. The relationship of these state laws to the FTC's TSR affects

the federal system and its intended uniform design as a whole. Often, substantial questions

implicate "pure issues of law . . . that [can] be settled once and for all." *Id.* (quoting *Hart and*

*Wechsler's The Federal Courts and the Federal System* 65 (5th ed. 2003 Supp. 2005). For example, in *Grable*, the question was substantial because it implicated the Government's ability to collect taxes. 545 U.S. at 315, 125 S.Ct. 2363. Likewise here a substantial question implicates a state's ability to override federal law and undermine a uniform nationwide industry structure on which the federal regulation depends.

23.     ***Factor (4): the federal issue is capable of resolution in federal court without disrupting the federal-state balance***. As the foregoing illustrates, Plaintiff's intended application of state law would completely undermine the uniformity of the federal regulatory scheme, which established the DAP role and authorized Global's conduct in that role on these matters. Plaintiff's Complaint turns the DAP notion on its head and so implicates and necessarily raises, for example, issues under the FTC's TSR that are actually disputed, substantial, and capable of resolution in federal court without disrupting the federal-state balance approved by Congress.

**B.     The regulation of dedicated account processing servicers is pre-empted by federal law, such that any attempt at state regulation of dedicated account processing servicers by treating them as debt management service providers necessarily raises a federal question.**

24.     The entirety of the Complaint depends upon conflating the roles of a DAP with the role of a "debt management service provider" as defined by Miss. Code Ann. § 81-22-3. *See Complaint, ¶ 2, 45, 53*. This conflation is a mere legal conclusion by Plaintiff which is not mandated by the plain language of any Mississippi statute. As it is pertinent to this Notice of Removal, the conflation necessarily raises a federal question based on the federal level regulation of dedicated account processing servicers in the FTC's TSR.

25.     The TSR specifically recognizes the role that DAPs play in the nationwide consumer protection regime erected by the TSR. Indeed, Global is mentioned by name as an emblem of proper practice. Vol.75, Federal Register No. 153, p.48490 and fn.445. Specifically,

the TSR sets up DAPs as a buffer between consumers and DMSPs, preventing improper or predatory charges. *See,* 16 CFR § 310.4(a)(5)(ii).

26.     Federal preemption of a specific area of the law is a recognized exception to the well-pleaded complaint rule. *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 64, 107 S.Ct. 1542, 1546 (1987). *See also, Adams v. General Motors Acceptance Corp.,* 307 F.Supp. 2d 812, 816 (N.D. Miss. 2004) (recognizing the doctrine). This "preemption" should not be confused with pre-emption of all state law claims and regulations, such that states are precluded from acting at all. *E.g., Lowe's Home Centers, Inc. v. Olin Corp.,* 313 F.3d 1307, 1313 (11th Cir. 2002). Rather, in the context of remand, the term pre-emption is applied when application of state law would "completely undermine[]" the federal regulatory scheme, *Metropolitan,* 481 U.S. at 64, 107 S.Ct. at 1547, or if the federal law "so completely preempts a particular area," even without such a conflict, *Arana v. Ochsner Health Plan,* 338 F.3d 433, 440 (5th Cir. 2003) (internal citations and quotations omitted).

27.     This doctrine was recently discussed by the Fifth Circuit in *Hood v. J.P. Morgan Chase & Co.,* 737 F.3d 78 (5th Cir. 2013). There, the Attorney General of the State of Mississippi brought *in parens patriae* complaints asserting violations of the MCPA in state court, alleging that a credit card company added certain services to accounts and charged fees for them without the consumer's knowledge or consent. The defendant removed the cases on federal question grounds, arguing among other things that the state law claims were pre-empted for removal purposes based on federal usury laws. The Fifth Circuit rejected the defendant's argument only because the attorney general's complaint did not interfere or conflict with the federal law on usury, and did not even allege that the charges that form the basis of the complaint constituted interest. *J.P. Morgan,* 737 F.3d at 90, 93.

28.     What was missing in *J.P. Morgan* is present in this case. Plaintiff has alleged that DAPs such as Global are lumped together with DMSPs for purposes of the MCPA and the MDMSA. Unlike the allegations in *J.P. Morgan,* these allegations are directly contradicted by and interfere with the FTC's TSR. The TSR very carefully separates out the function of the DAP, and actually utilizes that function as a layer of consumer protection. Plaintiff's claim is predicated on ignoring or dismantling the uniform nationwide structure of the industry mandated by the FTC's TSR and its distinction between DAPs and DMSPs. This implicates federal law in three distinct ways.

29.     First, it undermines the FTC's TSR by forbidding what the TSR expressly permits. Second, the conflation of the DAP with the DMSP negates the structural framework of the regulation set forth in the FTC's TSR such that the two cannot co-exist in a federalist system. And third, the Complaint would effectively over-rule those portions of the FTC's TSR affecting DAPs within the territorial bounds of the State of Mississippi. There is "an important national interest . . . in the availability of a federal forum to clarify the meaning of the laws promulgated by [the FTC,] a federal administration agency." *Entergy Mississippi, Inc.,* 2015 WL 13448017, at *6.

### IV.     THE RULE OF UNANIMITY IS SATISFIED.

30.     Section 1446 sets forth the procedure for removing a civil action to federal court. *Chapman v. RevClaims, LLC*, No. 1:17CV75-HSO-JCG, 2018 WL 893866, at *2 (S.D. Miss. Feb. 14, 2018). One requirement embodied in § 1446(b)(2)(A) is sometimes referred to as the "rule of unanimity." *Id.* (citations omitted). "The rule of unanimity requires that all defendants to an action either sign the original petition for removal *or* timely file written consent to the removal." *Id.* (citing *Powers v. United States*, 783 F.3d 570, 576 (5th Cir. 2015) (italics in

original)). Here, there are twelve named defendants. Each named Defendant who has been properly joined and served has consented or is consenting to the removal of the State Court Action by filing a written consent.[2] "Defendants . . . who are unserved when the removal petition is filed need not join in it."  *Pike Cty., Mississippi v. Aries Bldg. Sys., LLC*, No. 5:17-CV-17-DCB-MTP, 2017 WL 1737722, at *3 (S.D. Miss. May 3, 2017) (citation omitted).

## V.  REMOVAL IS TIMELY AND NOTICE HAS BEEN GIVEN.

31.     This Notice of Removal is timely. Global is filing this Notice within thirty (30) days after service of the Summons and Complaint and within one (1) year after the commencement of the action, as permitted by 28 U.S.C.§ 1446(b).

32.     Global will promptly give written notice of the filing of the Notice of Removal to all adverse parties and will file a copy of the Notice of Removal with the Chancery Court of Hinds County, Mississippi, as required by 28 U.S.C. § 1446(d).

## VI.  THE ENTIRE STATE COURT RECORD IS ATTACHED.

33.     Global has attached to this Notice of Removal copies of all "process, pleadings, and orders" served on it in the State Court Action filed in the Chancery Court for Hinds County, Mississippi, as required by 28 U.S.C. § 1446(a) and Local Uniform Civil Rules 5(b).[3]

---

2.  *See* Composite Exhibit "A," signed consents to removal from joined and served Defendants, and an email from The Law Offices of Robert S. Gitmeid & Assoc., PLLC, and Robert S. Gitmeid stating (to counsel for Global, Greenspoon Marder LLP attorney Meredith Leonard, whose application *pro hac vice* will be forthcoming) that each will be filing a separate signed consent to removal.
3.  *See* Composite Exhibit "B," the entire state court record in the format required by Local Uniform Civil Rule 5(b) and the Administrative Procedures for Electronic Case Filing.

## VII.   VENUE.

34.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1441(a) and 1446(a) because the State Court Action is pending in Hinds County, Mississippi, which falls within the United States District Court for the Southern District of Mississippi.

## VIII.   NO WAIVER OF DEFENSES.

35.     Nothing in this Notice shall be interpreted as a waiver or relinquishment of Global's right to assert any defense or affirmative matter, including without limitation a motion to dismiss pursuant to Federal Rule of Civil Procedure 12 or a motion to compel arbitration.

## IX.   CONCLUSION.

36.     For the foregoing reasons, Global Client Solutions, LLC and Global Holdings, LLC hereby remove this case to the United States District Court for the Southern District of Mississippi, Northern Division.

RESPECTFULLY SUBMITTED this the 2nd day of May, 2018.

> **GLOBAL CLIENT SOLUTIONS, LLC, AND GLOBAL HOLDINGS, LLC, DEFENDANTS**

> BY:   */s/Silas W. McCharen*
>         OF COUNSEL

Prepared By:
SILAS W. McCHAREN – MS BAR #2213
smccharen@danielcoker.com
DANIEL, COKER, HORTON & BELL, P.A.
4400 OLD CANTON ROAD, SUITE 400
POST OFFICE BOX 1084
JACKSON, MS 39215
TELEPHONE:  (601) 969-7607
FACSIMILE:  (601) 969-1116

MICHAEL B. DICKINSON – MS BAR #101885
Mdickinson@danielcoker.com
DANIEL, COKER, HORTON & BELL, P.A.
1712 15TH STREET, SUITE 400
POST OFFICE BOX 416
GULFPORT, MS  39502-0416
TELEPHONE:  (228) 864-8117
FACSIMILE:  (228) 864-6331

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2018 I electronically filed the foregoing with the Clerk of the Court using the ECF system and sent a copy via U. S. Regular Mail, postage pre-paid, to the following:

John Corlew, Esq.
Corlew Munford & Smith, PLLC
4450 Old Canton Road, Suite 111
Jackson, MS 39211-5990
Telephone: 601.366.1106
Facsimile: 601.366.1052
*mcorlew@cmslawyers.com*
*Counsel for Plaintiff*

H. Hunter Twiford, III
McGlinchey Stafford, PLLC
1020 Highland Colony Parkway, Suite 702
Ridgeland, MS 39157
Telephone: 769.524.2300
Fax: 601.608.7968
*htwiford@mcglinchey.com*
*Counsel for Timberline Financial, LLC*

George W. Neville, Esq.
Jacqueline Ray, Esq.
Special Assistant Attorneys General
Office of the Mississippi Attorney General
P.O. Box 220
Jackson, MS 39205
Telephone: 601.359.3680
Facsimile: 601.359.2003
*gnevi@ago.state.ms.us*
*jacra@ago.state.ms.us*
*Counsel for Plaintiff*

Stephen T. Masley
McGlinchey Stafford, PLLC
PO Drawer 22949
Jackson, MS 39225
Telephone: 769.524.2300
Fax: 601.510.9788
*smasley@mcglinchey.com*
*Counsel for Timberline Financial, LLC*

Jason Graeber
2496 Pass Road
Biloxi, Mississippi 39531
Telephone: 228.207.7117
Facsimile: 228.207.8634
*Jason@jasongraeberlaw.com*
*Counsel for Plaintiff*

US Legal Services Group, P.C.
1 Sansome Street #3500
San Francisco, CA 94104

The Law Offices of Robert S. Gitmeid & Assoc., PLLC
2081 East 8th Street
Brooklyn, NY 11223

Robert S. Gitmeid
2081 East 8th Street
Brooklyn, NY 11223

Moore Legal Center, P.C.
2401 Hall Street SW, Suite 134
Grand Rapids, MI 49503

GRT Financial, Inc.
26711 Northwestern Hwy, Ste 375
Southfield, MI 48033

Assurance Consumer Services, LLC
3390 Mary Street, Ste 305
Coconut Grove, Florida 33133

American Financial Law Group, LLC
5010 W. Carmen Street, Suite 2640
Tampa, FL 33609

Apex Legal Group, P.C.
500 Ygnacio Valley Road, Ste. 430
Walnut Creek, CA 94596

Consumer Capital Advocates, LLC
3221 NW 10th Terrace, Suite 502
Oakland Park, FL 33309

Hinds County Chancery Clerk
Eddie Jean Carr
Post Office Box 686
Jackson, MS  39205

　　　　SO CERTIFIED this the 2nd day of May, 2018.


　　　　　　　　　　　　　*/s/Silas W. McCharen*
　　　　　　　　　　　　　SILAS W. McCHAREN